505 So.2d 867 (1987)
SPRINGHILL BANK & TRUST COMPANY, Plaintiff-Appellant,
v.
CITIZENS BANK & TRUST COMPANY, Defendant-Appellee.
No. 18,546-CA.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1987.
*868 Fish, Montgonery & Robinson by Roy M. Fish, Springhill, for plaintiff-appellant.
McConnell, Harris & Slattery by John B. Slattery, Jr., Springhill, for defendant-appellee.
Before MARVIN, FRED W. JONES, Jr. and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
A payor bank appealed a judgment permitting the drawee bank, after receiving a stop payment order, to charge back the amount of a check pursuant to an agreement between the banks even though the customer's account had been debited and the drawee bank had issued its check to the payor bank in payment of the item. We affirm for the reasons explained.
Bill and Ralph's Poultry and Eggs, Inc. issued a check, dated January 30, 1985, in the amount of $2,052 made payable to the order of Cox Enterprises, Inc. for merchandise delivered to Bill and Ralph's. The check was drawn on Bill and Ralph's checking account at Citizens Bank and Trust Company. Horace L. Cox, president of Cox Enterprises, cashed the check at Springhill Bank and Trust Company on February 6, 1985.
On February 7, 1985 Springhill Bank presented Citizens Bank with the check, along with a number of other items, for payment.[*] Citizens Bank sent the check by courier to Commercial National Bank for computer processing later the same day. Bill and Ralph's account was debited the night of February 7, 1985, and the check was returned to Citizens Bank the morning of February 8, 1985.
Bill and Ralph's telephoned Citizens Bank and stopped payment on the check on February 8, 1985. Bill Carter, vice president of Bill and Ralph's, signed a stop payment order that same afternoon. Citizens Bank charged back the amount of the check to Springhill Bank on February 11, 1985, by way of deduction from another settlement check.
On June 27, 1985, Springhill Bank filed suit against Citizens Bank to recover the money due on the check. The trial court found that there was an agreement between the banks to the effect that either bank could return unpaid items on the third working day rather than giving notice before its midnight deadline, and thus rendered judgment in favor of Citizens Bank. Springhill Bank appealed this judgment.
Springhill Bank contends that it was the practice of the banks to charge back insufficient funds checks or checks on which payment had been stopped prior to the time one bank issued its check to the other covering the item, but there has never been any custom to charge back checks when there were sufficient funds to pay the check and a stop payment request was made after the bank had given its check in payment for the item and the customer's account was debited.
On the other hand, Citizens Bank argues that what occurred was the standard procedure used between the banks. Citizens Bank asserts that on February 8, 1985, prior to the time the check was manually examined for endorsement and the decision to pay made by the appropriate official at the bank by stamping "paid" on the check and its filing into the customer's account file, the stop payment order was issued. Citizens Bank also argues that the settlement check given to Springhill Bank covering the item was provisional payment, and the stop payment ordered issued prior to its decision to pay the check was timely and done in the normal and ordinary course of business.
La R.S. 10:4-212(2) provides that a bank may return an unpaid item within the time and manner prescribed by that section and La.R.S. 10:4-301. The latter provides that when an authorized settlement for a demand item received by a payor bank otherwise than for immediate payment over the *869 counter has been made before midnight of the banking day of receipt, the payor bank may revoke the settlement and recover payment if done before it has made final payment and before its midnight deadline. However, La.R.S. 10:4-103(1) provides in part:
The effect of the provisions of this chapter may be varied by agreement.... See also La.R.S. 10:4-213(1)(b) and 4-303(1)(c).
H.E. Waters, president and chief executive officer of Springhill Bank, admitted that there was a "three day" agreement between the banks relative to insufficient funds checks, checks with missing endorsements, checks written on a closed account, or checks that have had a "timely stop payment order" issued on them. Waters explained that a "timely stop payment order" would be one received by the bank on which the check was drawn before that bank had issued its check in payment of the item.
Larry Wainwright, president and chief executive officer of Citizens Bank, testified that there were a number of other reasons why a check would not have been paid, e.g. a check drawn against uncollected funds, a check with an irregular signature, etc. Wainwright stated that a stop payment order would have been untimely only after the check was stamped "paid".
The trial court found that the "three day" agreement applied to items not paid for any reason. We cannot say that this conclusion is clearly wrong.
For the foregoing reasons, we affirm the judgment of the trial court, at the cost of Springhill Bank and Trust Company.
NOTES
[*] Evidence adduced at trial indicated that these banks exchanged checks on a daily basis, and the bank with checks totaling a lessor amount would issue its check for the difference (Citizens Bank in this instance).